# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FRANK V. MIELKE,

        Plaintiff,                           Case Number: 2:10-cv-11576

v.

                                        Paul D. Borman
BANK OF AMERICA HOME LOANS       United States District Court
SERVICING LP, Successor in Interest
to COUNTRYWIDE HOME LOANS,
INC.,

        Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on Defendant Bank of America Home Loan Servicing

LP's[1] ("Defendant") motion to dismiss Plaintiff Frank V. Mielke's ("Plaintiff") claim that it violated

the Michigan Collection Practices Act ("MCPA").[2] (Dkt. No. 7.) Plaintiff has filed a response (Dkt.

No. 8) and Defendant has filed a reply. (Dkt. No. 10.) For the following reasons, Defendant's

motion to dismiss is DENIED.

## I.      Background

On October 27, 2003, Plaintiff obtained an adjustable rate loan (the "Loan") from non-party

Full Spectrum Lending, Inc. ("Full Spectrum") for a principal amount of $110,500. (Def.'s Br. in

---

[1] There is some confusion over Defendant's name. Defendant claims that Plaintiff erroneously named it Bank of American Home Loans Servicing LP when in reality its proper name is BAC Home Loans Servicing, LP. (Def.'s Mot. to Dismiss 2.) The case caption also describes Defendant as the successor in interest to Countrywide Home Loans, Inc. Defendant contends that Countrywide is still an existing entity. (*Id.* at 2 n.1.)

[2] Plaintiff's original Complaint contained two other counts, but on August 2, 2010, the Court entered a stipulated order dismissing Counts I and III of Plaintiff's Complaint. (Dkt. No. 9.) As a result, Plaintiff's MCPA claim is all that remains before the Court.

Supp. of its Mot. to Dismiss 1; Ex. 1.)  The Plaintiff granted a mortgage (the "Mortgage") on his property located at 4159 Skinner Lake Road, Lapeer Michigan (the "Property") to non-party Mortgage Electronic Registration Systems, Inc. ("MERS") as security for the Loan.   (*Id.*) Defendant, f/k/a Countrywide Home Loans Servicing LP, is the servicer of the Loan.[3]  (*Id.*)

Between 2006 and 2008 Plaintiff struggled to make his mortgage payments.  (*Id.* (quoting Compl. ¶ 7).)  On May 2, 2008, Defendant voluntarily lowered Plaintiff's interest rate to 7.625%. (Def.'s Br. 2; Ex. 4 – notice dated May 2, 2008.)  In the May 2 notice, Defendant informed Plaintiff that his account was due for $2,522.02 and that he owed monthly payments of $786.60.  (Ex. 4.)

On May 23, 2008, Defendant sent Plaintiff another notice indicating that his rate reduction had been completed.  (*Id.*; Ex. 4 – notice dated May 23, 2008.)  This modification lowered Plaintiff's interest rate to 7.625%, modified the principal balance of his mortgage to $105,971.47, and increased Plaintiff's monthly payment to $928.29 a month.  (Ex. 4.)  The cover letter also stated "[o]ur records indicate your account is due for 0."  (*Id.*)  Finally, the May 23 notice warned "[t]his Letter does not stop, waive or postpone the collection actions, or credit reporting actions we have taken or contemplate taking against you and the property" and "[i]n the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than June 15[,] 2008 we will continue our collections actions without giving you additional notices or response periods."  (*Id.*) Plaintiff accepted Defendant's offer to modify the Loan on June 12, 2008.  (Def.'s Br. 3; Ex. 4.)

On November 3, 2008, Defendant sent Plaintiff a letter informing him that the modification

---

[3] A loan servicer is the entity that receives periodic payments from the borrower in accordance with the loan's terms, including amounts for escrow accounts, and making the payments of principal and interest, as well as other payments as may be required.  (Def.'s Br. 1 n.2 (quoting 12 U.S.C. § 2605).)

was processed on July 21, 2008.  (Pl.'s Resp. Ex. 9.)  The letter also stated that there was an overage of $669.60 which was included in Plaintiff's new principal balance, and informed Plaintiff that "we have applied $669.60 to a principal reduction on your account.  This change will be reflected on your next billing statement."  (*Id.*)

On December 9, 2008, Defendant offered to modify the Loan a second time.  (Def.'s Br. 3; Ex. 5.)  This letter offered to reduce Plaintiff's interest rate to 4.125% fixed for five years,[4] lowered the monthly payments to $598.08, and stated his anticipated principal balance at the time his first payment would become due under the modification was $111,411.37.  (Ex. 5.)  The December offer further stated that "[a]ccepting the enclosed modification also resolves your past due amount of $1,091.91 as of December 7, 2008."  (*Id.*)  The notice also contained the same disclaimer that the May modification did about not altering Defendant's right to initiate collection actions.  (Def.'s Br. 3.)  Plaintiff accepted this offer on December 22, 2008.  (Ex. 5.)

On January 2, 2009, Defendant sent Plaintiff a Notice of Intent to Accelerate that he received on January 13.  (Def.'s Br. 3; Compl. Ex. G.)  The notice informed Plaintiff that his Loan was in serious default and that if he did not pay his outstanding balance of $2,033.72 by February 1, 2009, Defendant would accelerate and make due the full amount remaining on the Loan.  (*Id.*)  Defendant calculated Plaintiff's total amount due by adding $1,830.56 in Monthly Charges from December, Late Charges from December of $39.54, Total Late Charges of $158.16, and Uncollected Costs of $60.00.  (Compl. Ex. G.)  It then reduced that amount by a Partial Payment Balance of $54.54.  (*Id.*)  Plaintiff claims that the monthly amount contained in the notice was inconsistent with both

---

[4] After five years, Plaintiff's interest rate would be the higher of 7.625% or the then-current market rate for a 30-year fixed Fannie Mae loan.  (Ex. 5.)  This rate would become fixed for the remainder of the Loan.  (*Id.*)

3

modifications.  (Pl.'s Resp. 1.)

Plaintiff claims that on March 2, 2009 he mailed his Loan payment for that month and it was returned on March 23.  (*Id.* at 2.)  Similarly on August 3, 2009, he mailed a check for his August payment.  This was returned on or about August 22, indicating it was less than the amount owed.  (*Id.*)  "Since September 2009, Plaintiff has paid the amounts due as indicated on each statement with the most recent statement being $968 for principal, interest, and escrow payments."  (*Id.*)

Plaintiff alleges that the letters Defendant sent offering to modify the Loan were communications to collect a debt and contained false, deceptive, and misleading representations in violation of the MCPA, Mich. Comp. Laws § 445.251 *et seq.*  (Compl. ¶¶ 68-74.)  In addition to arguing that Defendant sent confusing, inaccurate, misleading, untrue statements in connection with collecting a debt in violation of § 252(a), (e), and (f)(ii), Plaintiff also claims that "Defendants have also violated § 252(q) because they have failed to implement procedures designed to prevent the above acts."  (*Id.* ¶ 73.)  Defendant has moved to dismiss Plaintiff's claims because it contends that the letters it sent Plaintiff were not communications to collect a debt, and even if they were, they were not misleading.  (Def.'s Br. 11.)

## II.    Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts which, if true, would entitle it to relief.  This requires more than a mere formulaic recitation of the elements of a cause action, and conclusory statements alone will be insufficient.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (internal citations omitted); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2008).  The claims set

4

forth must be plausible, rather than simply conceivable.  *See Twombly*, 550 U.S. at 570.  When

evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to

the plaintiff and draw all reasonable inferences in its favor.  *See DirecTV , Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007).

## III.    Discussion

The MCPA, Mich. Comp. Laws § 445.251 *et seq*., was enacted "to regulate the collection

practices of certain persons."  (Def.'s Br. 8.)  Section 252(a) generally prohibits "regulated persons"

from "[c]ommunicating with a debtor in a misleading or deceptive manner."  Regulated entities are

defined as "a person whose collection activities are confined and are directly related to the operation

of a business other than that of a collection agency."  § 251(g).[5]  The MCPA forbids such entities

from "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a

communication to collect a debt or concealing or not revealing the purpose of a communication

when it is made in connection with collecting a debt." § 252(e).  Finally, section 251(f)(ii) is violated

if the defendant misrepresents the legal rights of the creditor or the debtor in a communication to

the debtor.  This section does not require that the communication be in connection with the

collection of a debt.  *See* § 252(f).[6]

In addition to claiming that the letters Defendant sent were misleading or inaccurate, Plaintiff

also contends that every invoice he received and every phone call conversation with Defendant's

_____

[5] Defendant does not contest that it falls under this definition.

[6] Although sections 252(a) and (f)(ii) do not contain an explicit requirement that the
communications be made in connection with the collection of a debt, other courts have analyzed
claims made pursuant to these statutes under the FDCPA.  *See, e.g.*, *Saltzman v. I.C. Sys., Inc.*,
No. 09-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009).  Furthermore, because the Court
finds that the letters are communications relating to debt collection this issue is not decisive.

5

representatives also contained misrepresentations regarding late charges or the balance on his principal because they were based off of errors contained in the letters.  (Pl.'s Resp. 4.)  Plaintiff argues that "[i]f the terms of the modification were unclear, made in error, referenced a wrong balance amount, wrong past due amount, etc. then by logical conclusion, each phone call and letter stating or demanding that inaccurate amount would also be inaccurate."  (*Id.*)  Defendant argues that "plaintiff's allegations fail to state a claim for a violation for MCPA as the communications at issue were not in connection with collecting a debt, inaccurate, untrue, misleading or deceptive."  (Def.'s Br. 11.)

### A.     Were Defendant's Letters Communications in Connection with Collecting a Debt?

The term "communication in connection with collecting a debt" is not defined in the MCPA or the case law interpreting it.  The term has been interpreted by courts analyzing the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., an analogous federal statute. (Def.'s Br. 9.)  "Because the Michigan provision closely mirrors the federal exclusion, interpretations of the federal statute provide highly persuasive, although not binding, authority." *Dana v. Am. Youth Found.*, 257 Mich. App. 208, 215 (2003).  Many courts have acknowledged the similarities between the FDCPA and the MCPA.  *See, e.g.*, *McKeown v. Mary Jane M. Elliot P.C.*, No. 07-12016, 2007 WL 4326825, at *9 (E.D. Mich. Dec. 10, 2007) ("The parties did not identify any legal authority distinguishing the standard applicable to the Michigan causes of action from the federal statute."); *Lovelace v. Stephens & Michaels Assocs.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (finding that plaintiff's MCPA claims "simply duplicate his claims under the FDCPA and need not be addressed separately").

The FDCPA prohibits entities from making false, deceptive, or misleading representations

6

in connection with the collection of debts. *See* 15 U.S.C. § 1692e. Courts have held that letters simply informing the plaintiff of the current status of his account that do not make any demand for payment are not communications in connection with the collection of a debt under the FDCPA. *See, e.g.*, *McCready v. Jacobsen*, No. 06-2443, 2007 WL 1224616, at *1 (7th Cir. Apr. 25, 2007) (citing *Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998)); *Mabbitt v. Midwestern Audit Serv., Inc.* No. 07-11550, 2008 WL 723507, at *4 (E.D. Mich. Mar. 17, 2008) (Edmunds, J.) (citing *McCready*). Whether a communication was made in connection with debt collection "is a question of objective fact, to be proven like any other fact." *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 386 (7th Cir. 2010) (quoting *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009)).

Defendant claims that under the Seventh Circuit's decision in *Bailey*, its letters should not be considered communications in connection with collecting a debt. (Def.'s Br. 9.) In *Bailey*, the defendant loan servicers sent the plaintiffs a letter that listed the next four payments the plaintiff owed and stated:

> We wish to work with you on the resolution of your delinquency and will allow you to continue to make the payments remaining under this agreement. However, sending less than the forbearance payment amount and late payment of your monthly installment may render this agreement null and void requiring immediate payment in full of all sums due under the terms of your Note.

154 F.3d at 386. The plaintiffs sued the defendants because the letter did not contain any of the FDCPA's required notices. *Id.* The district court granted the defendants' motion for summary judgment because it concluded that the defendants "were not demanding payment on a defaulted loan." *Id.* at 385. The Seventh Circuit affirmed. *Id.* The Seventh Circuit held that the letter could not reasonably be considered sent "in connection with the collection of any debt" as the FDCPA requires. *Id.* at 388. The court found that the letters did not make any demand for payment, but

7

rather merely informed the plaintiffs about the current status of their account and warned them that failure to make timely payments could result in acceleration. *Id.* at 388-89. The court stated "[a] warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstances wherein payments are missed and a real dun must be mailed." *Id.* at 389. The court also found that all of the information about the plaintiffs' account status was prospective, and added the letter "doesn't even imply that anything owed under the Baileys' forbearance agreement is overdue." *Id.*

Defendants argue that their communications with Plaintiff never demanded payment of a debt, and "merely informed plaintiff of the current status of his loan and offered to modify the terms of the Loan." (Def.'s Br. 10.) Thus, it claims that under *Bailey* the letters are not communications made in connection with the collection of a debt. *See* 154 F.3d at 389.

Plaintiff makes several arguments in support of his contention that the letters should be considered communications in connection with debt collection. First, although Plaintiff agrees that the FDCPA and the MCPA are similar and analogous and that the term "communication to collect a debt" is not explicitly defined in the statute, he argues the term's meaning can be derived from combining the terms "debt" and "communication" which are defined in sections 251(a) and (c) respectively. (Pl.'s Br. 6-7.) The MCPA defines the terms "claim" or "debt" to mean "an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes." § 445.251(a). "Communicate" means "the conveying of information regarding a debt directly or indirectly to a person through any medium." § 251(c).

Plaintiff does not fully develop this argument – instead he goes almost immediately into

8

distinguishing *Bailey* – but in any event, it is unpersuasive.  Defendant's letters were clearly communications and clearly involved Plaintiff's debt.  Plaintiff's "synthesized definition" fails to shed light onto whether the letters were made "in connection" with debt collection, or what constitutes debt collection.  As a result, the Court finds that the definitions contained in § 251 of the MCPA offer little guidance for determining whether Defendant's communications were made in connection with debt collection.

Alternatively, Plaintiff contends that even if the Court adopts *Bailey*, Defendant's communications should still be considered related to debt collection.  (Pl.'s Br. 7.)  Plaintiff emphasizes the fact that in *Bailey*, the letter only addressed future payments that were going to become due and did not even imply that anything is due or past-due.  *See* 154 F.3d at 389.  In fact, the Seventh Circuit explicitly distinguished the communication in *Bailey* from the prototypical dunning letter Chief Judge Posner drafted in *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) to serve as a model for debt collectors, which demanded an overdue credit card balance.  *Bailey*, 154 F.3d at 389.  Plaintiff argues that *Bailey* stands for the proposition that a communication to collect a debt is one that either demands a payment, or implies that something is owed.  (Pl.'s Br. 7.)

Additionally, Plaintiff directs the Court to *Gburek*, a recent Seventh Circuit decision on this issue.  In *Gburek*, the defendant loan servicing company sent the plaintiff a letter offering to discuss ways she could avoid losing her home to foreclosure and asking for current financial information when the plaintiff fell behind on her mortgage payments.  *Id.* at 381.  Days later, the plaintiff received another letter from Titanium Solutions on behalf of the defendant again asking for her information.  The defendant's letter stated:

> We recently sent you a letter requesting that you contact our office to review your financial situation and discuss foreclosure alternatives.

> To date, we have not received a response to our request.
>
> Again, we would like to emphasize that it is not too late to save your home.   Options may be available to help preserve your homeownership.  To determine options that best fit your financial situation, you must complete and return the enclosed form and provide the requested documentation to [Litton's Loss Mitigation Department] within 14 business days.
>
> * * *
> Litton will not delay ongoing legal action on your home until your financial information has been received and processed.

*Id.* at 382.  The bottom of the letter also read "LITTON LOAN SERVICING LP IS A DEBT COLLECTOR.  THIS LETTER IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.*

The district court granted the defendant's motion to dismiss the plaintiff's FDCPA claims, holding that the defendant's conduct did not fall within the ambit of the FDCPA because the letter did not contain a demand for payment. *Id.* at 381.  The Seventh Circuit reversed. *Id.* at 382.  In holding that the defendant's letter was a communication in connection with the collection of a debt, the Seventh Circuit analyzed its prior decision in *Bailey* and a number of other cases and set forth several general rules for future courts construing FDCPA claims.

First, the *Gburek* court stated "[n]either this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Id.* at 384.  Next, it held that its decision in *Bailey* did not establish a categorical rule that a communication cannot fall within the purview of the FDCPA unless it makes an explicit demand for payment. *Id.* 384-85 ("The absence of a demand for payment was just one of several factors that influenced the outcome in *Bailey*.").  The court stated that the fact that the letter in *Bailey* only mentioned prospective payments, and that the plaintiff had not missed any

10

payments on the new forbearance agreement, and so nothing was past due, were additional factors that influenced that decision.  *Id.* at 384.

*Gburek* enumerated several factors courts should consider when analyzing whether the FDCPA applies to a communication.  Along with the absence of a demand for payment, the court stated the nature of the parties' relationship, the purpose, and the context of the communication are also important considerations.  *Id.* at 385.  Finally, the court also stated that "a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA."  *Id.* (citing *Horkey v. J.V.D.B. & Assocs.*, 333 F.3d 769, 774 (7th Cir. 2003)).  Applying these principles to the defendant's letter, the *Gburek* court held that it constituted a communication in connection with the collection of a debt because "it was an offer to discuss Gburek's repayment options."  *Id.* at 386.  Although the letter stated that the defendant was a debt collector and that the letter was an attempt to collect a debt, the court did not rely on that language.  In a footnote, the court stated "[t]he letter bore a disclaimer identifying it as an attempt to collect a debt, but this does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance."  *Id.* at 386 n.3.

The Court finds that Defendant's letters in the instant case were communications in connection with a collection of a debt.  Although neither *Bailey* or *Gburek* are binding on this Court, other district courts in the Eastern District of Michigan have relied on them when analyzing FDCPA claims.  *See, e.g.*, *South v. Midwestern Audit Servs., Inc.*, No. 09-15740, 2010 WL 5089862, at *7 (E.D. Mich. Dec. 8, 2010).

Applying the Seventh Circuit's reasoning in those cases to Defendant's letters demonstrates that they would be considered communications made in connection with debt collection under the

FDCPA, and therefore are under the MCPA as well.

In the May 2, 2008 notice, Defendant informed Plaintiff that his account was due for $2,522.02 and that he owed monthly payments of $786.60. (Def.'s Br. Ex. 3.) Although not an explicit demand for payment, telling a debtor that a certain amount is due on their account is an implicit demand for payment. Even if it is not a demand of any kind, *Gburek* states that the absence of a demand is only one factor. 614 F.3d at 385. Furthermore, this letter is distinguishable from the one at issue in *Bailey* because it states that there is an amount due on Plaintiff's account. *See* 154 F.3d at 389. As a result, the Court holds that the May 2, 2008 notice is a communication relating to the collection of a debt.

Next, the letter Defendant sent on May 23, 2008 was also made in connection with debt collection. Although no demand for payment is made (the notice states that Plaintiff does not owe any money), the letter asked Plaintiff to "please consider the enclosed loan modification." (Ex. 4.) Although this does not ask Plaintiff to settle a debt, it does "offer to discuss [Plaintiff's] repayment options, which qualifies as a communication in connection with an attempt to collect a debt." *See Gburek*, 614 F.3d at 386. While the May 23 letter may not have been made in connection with an attempt to collect a debt because it does not have some of the additional indicia that the supported the *Gburek* court's conclusion, such as the fact that the defendant in that case was offering alternatives to foreclosure. *Id.* Accordingly, the Court holds that at this stage the a question of fact remains regarding this letter.

The December 9, 2008 notice is clearly a communication in connection with the collection of a debt. It states "[a]ccepting the enclosed modification also resolves your past due amount of $1,091.91." (Ex. 5.) This letter, therefore, is both an implicit demand for past due payments on

12

Plaintiff's account and "a communication made specifically to induce the debtor to settle [his] debt." *See Gburek*, 614 F.3d at 385.

Finally, the Notice of Intent to Accelerate, which Defendant sent on January 2, 2009, was also made in connection with the collection of a debt. The notice frankly informed Plaintiff that his account was "in serious default," tallied the total amount due at $2,033.72, and stated "[i]f the default is not cured on or before February 1, 2009, the mortgage payments will be accelerated." (Compl. Ex. G.)

### B.    Were the Letters Not Misleading or Confusing as a Matter of Law?

Defendant argues that even if the Court construes the letters as actionable under the MCPA, the Court should still dismiss Plaintiff's claims because the communications are not misleading. (Def.'s Br. 11.) Defendant points out that there is nothing inherently deceptive about offering to modify the Loan in December 2008 with a first payment due date of February 1, 2009 and then issuing a Notice of Intent to Accelerate in January 2009 because the modification did not limit or change Defendant's right to accelerate any time the Loan was in default. (*Id.*)

It is not clear whether this was confusing because the modification purported to absolve Plaintiff's outstanding balance if he accepted it, and said that the new payment rate would become effective February 1, 2009. (Ex. 5.) Then in early January, Defendant informed Plaintiff that he owed over $2,000. (Compl. Ex. G.) Plaintiff also alleges that the May 28, 2008 letter was misleading because it told Plaintiff his account was due for "0" but also added $1,342.96 to his principal as a result of the proposed modification. (*Id.* ¶¶ 10-13.) Additionally, Plaintiff claims that Defendant failed to properly apply an overage of $669.90 to his account that Defendant notified him about in November 2008. (*Id.* ¶ 19; Pl.'s Resp. Ex. 9.) These are just some examples of Plaintiff's

13

many allegations. Because Plaintiff has alleged sufficient facts to support his claims under the MCPA, the Court should will not dismiss his Complaint.

      **C.**      **Failure to Implement Procedures under § 445.252(q)**

Plaintiff also claims that Defendant violated MCPA section 445.252(q) by claiming it "failed to implement procedures designed to prevent the above acts." (Compl. ¶ 73.) Defendant argues that Plaintiff has not made any specific allegations as to how it violated § 252(q), and therefore the Court should dismiss this claim. (Def.'s Br. 12-13.) Defendant argues that Plaintiff must allege "more than the bare assertion of legal conclusions." (*Id.* at 13 (quoting *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).)

The Court declines to dismiss Plaintiff's § 252(q) claim. While Plaintiff has not alleged specifically what procedures Defendant should have had in place, or how those procedures in place broke down, he has done more than offer bare legal assertions. Without discovery it would be very difficult for Plaintiff to be able to have the knowledge of Defendant's operations necessary to make such detailed claims. Throughout his Complaint, however, Plaintiff claims various communications he received from Defendant were misleading. Those factual allegations provide enough substance to Plaintiff's claim under § 252(q).

**IV.**      **Conclusion**

Because the majority, if not all, of Defendant's letters to Plaintiff constitute communications made in connection with the collection of a debt, and because Plaintiff has sufficiently alleged that they were misleading, deceptive, untrue, or confusing, Plaintiff has stated claims upon which relief can be granted under the MCPA § 252(a), (e), and (f)(ii). Accordingly, the Court DENIES Defendant's motion to dismiss.

**SO ORDERED**.

                                           S/Paul D. Borman
                                           PAUL D. BORMAN
                                           UNITED STATES DISTRICT JUDGE

Dated:  April 18, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 18, 2011.

                                           S/Denise Goodine
                                           Case Manager